[Civ. No. 11585.    Third Dist.    Apr. 11, 1968.]

ROY SUTFIN et al., Plaintiffs and Appellants, v. STATE OF CALIFORNIA, Defendant and Respondent.

Watt & Peckham and Reginald M. Watt for Plaintiffs and Appellants.

Harry S. Fenton, Robert F. Carlson, Edward J. Connor, Jr., and Donald M. Pach for Defendant and Respondent.

REGAN, J.—In this action for damages for inverse condemnation, the trial court sustained the demurrer of defendant State of California, without leave to amend, stating plaintiffs' amended complaint failed to state a cause of action. Plaintiffs appeal from the trial court's judgment that the action be dismissed with prejudice as to defendant State of California.

By their first amended complaint plaintiffs allege that within the time allowed by law their claims for damages against defendant State of California were served and filed and thereafter denied; that defendant State of California participated in the planning, designing, construction, maintenance, and operation of highway (Interstate 5) and flood control works associated with the highway in the vicinity of and across Thomes Creek in Tehama County; that on or about December 22, 1964, waters from Thomes Creek were discharged out of the creek onto the motor vehicles of the plaintiffs, which were located on real property near, but out of, the channel of Thomes Creek, causing damage to their vehicles as a proximate result thereof, and that the discharge of the waters onto the motor vehicles was proximately caused by the plan, design, construction, maintenance or operation of Interstate Highway 5 and its associated flood control works. Plaintiffs seek money damages.

In discussing his ruling sustaining defendant's demurrer without leave to amend, the trial judge asserts the primary contention of the defendant State of California is that inverse condemnation is not available to plaintiffs as to personal property and, being in agreement, holds the complaint does not state a cause of action.

Plaintiffs contend damage to personal property is compensable under article I, section 14, of the state Constitution[1] and argue that in this inverse condemnation action the concern is not with the statutory power but with the constitutional right of the owner of private property; that inverse condemnation is not limited by the statutory power of the infringing public body; and that the phrase "public use" in article I, section 14, refers not to the property taken or damaged but to the public project which causes the damage.

Defendant State of California contends, in response, that the complaint must allege facts showing that private property

---

[1]Article I, section 14, of the state Constitution, provides, in part: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner. . . ."

has been taken or damaged for public use in order to state a cause of action for inverse condemnation; that the term "public use" implies that the private property allegedly taken or damaged must have been or will be devoted to a public use; that damage to personal property is not a proper element of compensation within the meaning of article I, section 14; and that tort liability principles are exclusively controlling in this case.

█ We reverse the judgment of the trial court, and in so doing hold that in proper cases recovery may be had through inverse condemnation for the taking or damaging of private property for public use, whether said property be real or personal.[2]

---

[2]Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stanford Law Review 727, 739, fn. 50.

"The constitutional provisions, both state and federal, make no verbal distinction between real property and personal property with respect to the requirement of 'just compensation.' Federal decisions under the due process clause have repeatedly applied inverse condemnation principles in cases involving both personalty and intangibles. *See, e.g., Armstrong v. United States,* 364 U.S. 40 [4 L.Ed.2d 1554, 80 S.Ct. 1563] (1960) (destruction of materialmen's liens on boats held compensable taking); *Monongahela Nav. Co.* v. *United States,* 148 U.S. 312 [37 L.Ed. 463, 13 S.Ct. 622] (1893) (destruction of value of a franchise held a compensable taking). *Compare United States* v. *Caltex (Philippines), Inc.,* 344 U.S. 149 [97 L.Ed. 157, 73 S.Ct. 200] (1952) (denying recovery for destruction of real and personal property to prevent enemy seizure).

"The California decisions do not distinguish between real and personal property. *See, e.g., Patrick* v. *Riley,* 209 Cal. 350 [287 P. 455] (1930) (conceding that just-compensation clause applied to destruction of diseased cattle, but concluding that police power justified such destruction without payment of compensation); *Green* v. *Swift,* 47 Cal. 536 (1874) (plaintiff's cattle destroyed by flood allegedly aggravated by public improvement); *Affonso Bros.* v. *Brock,* 29 Cal.App.2d 26 [84 P.2d 515] (3d Dist. 1938) (*semble*). The applicability of inverse condemnation principles to personal property, of course, is not impaired by decisions holding that loss of value or cost of removal of personal property used in business is noncompensable incidental damage when the real property in which the personalty was employed is taken for public use but the personalty is left in private ownership. *See, e.g., Town of Los Gatos* v. *Sund,* 234 Cal.App.2d 24 [44 Cal.Rptr. 181] (1st Dist. 1965); *City of Los Angeles* v. *Siegel,* 230 Cal.App.2d 982 [41 Cal.Rptr. 563] (2d Dist. 1964).

"In any event, the state courts would necessarily have to yield to federal constitutional requirements in this regard, and, as noted above, takings of personalty are clearly compensable under the due process clause. *Cf.* Broeder, *supra* note 32, at 248-50. California decisions sometimes speak of inverse condemnation as applying only to a taking or damaging of real property, *see, e.g., Albers* v. *County of Los Angeles,* 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129] (1965), but such language should be regarded as inadvertent and as referring solely to the facts of the particular case (*i.e.,* the only damage claims under consideration were, in fact, to land)." (See cases compiled in 29A C.J.S. Eminent Domain, § 65, pp. 312-313, fn. 50; also 26 Am.Jur.2d Eminent Domain, § 80, p. 737, fn. 5.)

We find no merit in defendant's contention that in all cases the term "public use" implies that the private property taken or damaged must have been or will be devoted to a public use and that plaintiffs' complaint must allege facts to establish such before a cause of action for inverse condemnation is stated.

In *Clement* v. *State Reclamation Board*, 35 Cal.2d 628, 636-642 [226 P.2d 897], per Traynor, J., the court states: "If he obstructs the natural channel of the river, however, or creates a new artificial channel by which the natural stream waters of the river are carried onto the lands of another that would have been protected therefrom but for creation of the artificial channel, he is liable for damage resulting therefrom. [Citations.]

" . . . 'The liability of the state under article I, section 14 of the California Constitution arises when the taking or damaging of private property is not so essential to the general welfare as to be sanctioned under the "police power" [citations], and the injury is one that would give rise to a cause of action on the part of the owner independently of the constitutional provision. [Citations.] The provision permits an action against the state, which cannot be sued without its consent. It is designed, not to create new causes of action, but to give a remedy for a cause of action that would otherwise exist. The state is therefore not liable under this provision for an injury that is *damnum absque injuria.* If the property owner would have no cause of action were a private person to inflict the damage, he can have no claim for compensation from the state. [Citations.] In the present case, therefore, plaintiffs have no right to compensation under article I, section 14, if the injury is one that a private party would have the right to inflict without incurring liability.' [Citations.] . . .

"If, however, the construction of a flood control project diverts natural stream waters onto the land of a private owner and causes damage thereto, that property is as much taken or damaged for a public use for which compensation must be paid as if it were condemned for the construction of a highway or a school. . . .

" . . . The construction of the public improvement is a deliberate action of the state or its agency in furtherance of public purposes. If private property is damaged thereby the state or its agency must compensate the owner therefor (Cal.

Const., art. I, § 14; *Perkins* v. *Blauth,* 163 Cal. 782, 789 [127 P. 50]; *Kaufman* v. *Tomich,* 208 Cal. 19, 25 [280 P. 130]), whether the damage was intentional or the result of negligence on the part of the governmental agency. [Citations.] The decisive consideration is whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking. [Citations.] . . .

". . . 'If the water is diverted out of its natural channel and discharged into a different channel or upon neighboring land, the diverter is liable to the owner whose land is injured by such discharge. . . .' "

▅ In its reply brief defendant intimates that the Legislature has not authorized it to condemn personal property and therefore it is not liable in inverse condemnation. In support thereof, defendant cites section 104 of the Streets and Highways Code authorizing it to acquire real property only. The contention is without merit.

". . . In an inverse condemnation suit . . . the public entity ordinarily has made no intentional exercise of condemnation authority, but has, in a manner often unexpected and unanticipated, caused injury to the plaintiff's property. The question of public use in this context does not depend upon a showing that there is statutory authority in the defendant entity to exercise affirmative eminent domain powers to accomplish the same result. All that is necessary to show is that the damage resulted from an exercise of governmental power while seeking to promote 'the general interest in its relation to any legitimate object of government.' " (Van Alstyne, *supra,* at p. 781; see *Bauer* v. *County of Ventura,* 45 Cal.2d 276, 284 [289 P.2d 1]; see also, *Ward Concrete Co.* v. *Los Angeles Flood etc. Dist.,* 149 Cal.App.2d 840 [309 P.2d 546].)

Furthermore, liability in inverse condemnation is based on the state Constitution and not on statute.

▅ Defendant notes that there is no allegation that the motor vehicles taken or damaged have been or will be devoted to a public use, and hence there is no public use of the automobiles at all. We find no merit, noting: "It now appears settled that if the construction or maintenance of a public project is designed to serve the interests of the community as a whole, any property damage caused by the project or by its operations as deliberately conceived is for a public use and is constitutionally compensable. On the other hand, '[d]amage resulting from negligence in the routine operation having no

relation to the function of the project as conceived' is not within the purview of section 14.'' (Van Alstyne, *supra,* at p. 781; see *Bauer* v. *County of Ventura, supra,* 45 Cal.2d 276; *Ambrosini* v. *Alisal Sanitary Dist.,* 154 Cal.App.2d 720 [317 P.2d 33].)

Justice Traynor in his concurring opinion in *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d 384, states, at pages 395-397 [153 P.2d 950], as follows:

''Defendant is a public corporation created by an act of the Legislature, known as the 'Los Angeles Flood Control Act' (Stats. 1915, p. 1502, as amended; Deering's Gen. Laws, Act 4463), to protect lands, including harbors and public highways from flood waters and to conserve the flood waters for useful purposes. [Citation.] These purposes are essentially public although beneficial to many private individuals [citations], and the Legislature properly vested defendant with the power of eminent domain. (§§ 2(6), 16, 16½ of the act.) Property taken or damaged for defendant's purposes is therefore 'taken or damaged for public use' in the sense of the constitutional provision. In the absence of contract the right to discharge water onto another's property may be based on property law or on the police power of the state. [Citation.] If the discharging of water incident to the construction of a public improvement cannot be sustained as the exercise of a right, it is a taking or damaging within the meaning of the constitutional provision of the property injured. [Citations.] The destruction or damaging of property is sufficiently connected with 'public use' as required by the Constitution, if the injury is a result of dangers inherent in the construction of the public improvement as distinguished from dangers arising from the negligent operation of the improvement. The construction of the public improvement is a deliberate action of the state or its agency in furtherance of public purposes. In erecting a structure that is inherently dangerous to private property, the state or its agency undertakes by virtue of the constitutional provision to compensate property owners for injury to their property arising from the inherent dangers of the public improvement or originating 'from the wrongful plan or character of the work.' [Citations.] This liability is independent of intention or negligence on the part of the governmental agency. [Citations.] The decisive consideration is the effect of the public improvement on the property and whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public

undertaking. It is irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property, but the loss to the owner. [Citations.] Defendant, therefore, cannot rely on the fact that the injury to the property was caused, not by a deliberate appropriation thereof, but by a collapse of defendant's structures. It is of no avail to defendant that the invasion of plaintiff's property in the manner in which it happened was not foreseeable. The provision in article I, section 14, that the compensation for the taking or damaging of property shall be paid in advance protects the interests of the property-owner where advance payment is feasible under the circumstances; liability is not avoided simply because such payment is not feasible. The public purpose was not the mere construction of the improvement but the protection that it would afford against floods. The dangers inherent in the improvement would cause injury only when storms put the flood control system to a test. The injury sustained by plaintiff was therefore not too remote.''

█ To summarize, the trial court sustained the defendant's demurrer, without leave to amend, on the ground that the complaint did not set forth facts sufficient to state a cause of action in that personal property is not subject to inverse condemnation.

Plaintiffs' first amended complaint alleges physical damage to their private personal property resulting from the discharge of waters out of Thomes Creek; that this discharge of the waters causing the damage as a proximate result thereof, was itself proximately caused by the plan, design, construction, maintenance or operation by the state of the highway and associated flood control works. We cannot ascertain from the pleading whether this physical damage allegedly caused by the government activity was deliberately calculated (release of water under emergency conditions), faulty planning, design or construction, a product of negligence (employee or otherwise), or the result of other circumstances not pleaded.

The charging portions of the first amended complaint stated nothing but conclusions. The state's demurrer was properly sustained but leave should have been granted to plaintiffs .to amend. Whether they can state facts constituting a cause of action in inverse condemnation we do not know.

The judgment is reversed and the cause remanded to the

trial court with directions to vacate its former order on demurrer and to permit plaintiffs to amend their complaint should they be so advised.

Pierce, P. J., and Friedman, J., concurred.

Petitions for a rehearing were denied May 7, 1968, and respondent's petition for a hearing by the Supreme Court was denied June 5, 1968.