William CAMPBELL, Jr. and June Mary Campbell, his wife, R.E. Holzer and Margaret Holzer, his wife, and Norma Amer, Appellants,

v.

Richard ANDERSON and Shirley Anderson, his wife, Michael Anderson and Bonnie Anderson, his wife, David Anderson, John C. Collet, John Brandon and Yvonne Brandon, his wife, Community Bank of Chillicothe, and Matt Parrish, Respondents.

No. WD 46616.

Missouri Court of Appeals, Western District.

Oct. 19, 1993.

As Modified Nov. 24, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Richard N. Brown, Brown & Casey, Brookfield, for appellants.

N. William Phillips, Phillips & Spencer, P.C., Milan, for respondents Richard and Shirley Anderson, Michael and Bonnie Anderson and David Anderson; Jack Peace, Andereck, Evans, Milne, Peace & Baumhoer, Trenton, for respondents John and Yvonne Brandon; and Allan Brent Turner, Chapman, Cowherd & Turner, P.C., Chillicothe, for respondents John C. Collet, Community Bank of Chillicothe and Matt Parrish.

Before BERREY, P.J., and
BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

This appeal arises from the trial court's judgment against appellants in their action challenging the re-channelization of Parsons Creek by the owners of an adjoining tract of land. Appellants raise three points on appeal arguing that the trial court erred in: 1) failing to find and determine an unabated abatable nuisance and order injunctive relief; 2) failing to find and determine damages against each of the successive landowners of the tract upon which the abatement actions are necessary; and 3) determining that punitive damages would not be applicable under the nuisance claim of the appellants' petition.

The judgment is reversed and the case is remanded for a new trial.

This case includes a number of appellants and respondents as a result of the many land transfers that have taken place over the significant period of time this action encompasses. The appellants in the instant case include William and June Campbell, R.E. and Margaret Holzer, and Norma Amer. The respondents include Richard and Shirley Anderson, Michael and Bonnie Anderson, David Anderson, John Collet, John and Yvonne Brandon, the Community Bank of Chillicothe and Matt Parrish.

In 1952, the Campbells purchased a farm in Linn County, Missouri of approximately 225 acres. The farm consisted of significant pasture land and about twenty-six acres of

heavy timber. Mr. Campbell testified that he purchased the farm, which was quite run down, seriously eroded and overgrown with brush, because it was his intention to repair the damage.

Immediately upon purchasing the farm, the Campbells embarked upon a program to repair the run-down condition of their land, correct erosion, and re-seed the pasture land. Mr. Campbell testified that from 1952 to 1979, the flooding of his land was quite minor because even a heavy rain would run off quickly. Sometime prior to 1977, a small levee was built by the Brandons along the west side of Parsons Creek to prevent the flooding of their land. This levee caused flooding of the Campbells' pasture land which adjoined the Brandons' land and thus, the Campbells built a three foot levee along their west boundary to counter the flooding.

From 1962 to 1985, the Holzers owned a five-acre tract of land which abutted the southwest corner of the Campbell farm. In 1985, the Holzers sold their land to Norma Amer and her husband, Glenn, who is deceased.

In 1977, Richard Anderson, Michael Anderson and David Anderson, all brothers, purchased a tract of land to the west of the Campbells' farm from the Brandons, and later purchased two other forty-acre tracts of land nearby, for the purpose of operating a farm together. In the spring of 1979, the Anderson brothers embarked upon a project to re-channel Parsons Creek, so that the farm could be used for row crop farming. Parsons Creek originally entered the Anderson property at the north and meandered through it exiting at the southern edge of the property. The result of re-channelization was to straighten Parsons Creek so that it would flow parallel to the borders of the Anderson property. There was testimony at trial indicating that, prior to the completion of the project, both the Anderson and the Campbell farms flooded on a regular basis.

During the re-channelization project, Campbell registered a complaint with the United States Corps of Engineers (Corps). Dave Meyer, a field investigator for the Corps, visited the property to examine the work that was being done on Parsons Creek.

Meyer told the Andersons that, without a permit, the creek could be re-channeled but that they could not block either end or fill the original channel of the creek.

The Andersons applied to the Corps on September 9, 1979 for a permit to put a channel block at each end of Parsons Creek. The Corps required the Anderson brothers to obtain Missouri water quality certification before it would issue a permit for the channel block. The Anderson brothers' application for water quality certification was denied by the Missouri Department of Natural Resources. The decision was appealed to the Missouri Clean Water Commission and affirmed. The Anderson brothers sought review of the Commission's decision in the circuit court and the decision was reversed. The Commission then appealed the circuit court's judgment to this court which ruled that the Commission had not made sufficient findings of fact and remanded the cause to the circuit court with directions to remand to the Commission for findings of fact and conclusions of law. The matter was re-argued to the Missouri Clean Water Commission and the Commission again affirmed the denial of certification by the Missouri Department of Natural Resources. Such decision was not appealed. Subsequently in February of 1987, the Corps refused to issue a permit to the Andersons for the channel block due to the denial of their application for Missouri water quality certification.

Meyer testified at trial that the original channel had not been blocked in contravention of the law and, thus, there was nothing illegal about the re-channelization. Meyer also stated that the re-channelization project was accomplished within the boundaries of the Anderson property and the new channel entered and exited the property at the same points that the old channel had entered and exited.

In July of 1984, the Anderson brothers formed a general partnership with John Collet to which Collet contributed financially but did not participate in the actual farming activities. In February of 1986, the Anderson brothers deeded to Collet the eighty acre tract of their farm within which lies the old

and the new Parsons Creek channels.[1] The tract of the Anderson farm purchased from the Brandons was deeded back to them in July of 1986 in return for a release of the promissory note and the deed of trust that the Andersons had previously signed. The Anderson brothers continued to rent the Brandon property and farm it until 1988.

The appellants filed this action in the Linn County Circuit Court on December 2, 1986. Appellants Holzer and Amer seek trespass damages in Count I for the use and abuse by the Andersons of the five-acre tract owned first by the Holzers and then by the Amers.[2] In Count II, appellants seek actual and punitive damages for nuisance as a result of the efforts of the Andersons to re-channel Parsons Creek. Appellants pray for a restraining order and both temporary and permanent injunctive relief in Count III. Trial by the court without a jury took place on April 15–16, 1992. The trial court issued its judgment on April 18, 1992 finding all issues in favor of the respondents. This appeal was timely filed thereafter.

■ In defense of the appellants' claims, respondents pled the affirmative defense of statute of limitations alleging that the action was barred because it was filed more than five years after the new channel was constructed. This court will first address whether the affirmative defense of statute of limitations bars recovery by appellants. In doing so, however, this court is not required to decide whether the appellants' claims in the instant case constitute a nuisance. This court must affirm the judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 36 (Mo. banc 1976).

■ Section 516.120, RSMo 1986,[3] establishes a five-year statute of limitations for a cause of action for permanent nuisance. The statute of limitation for a temporary,

abatable nuisance is ten years. Section 516.010. The time at which a nuisance cause of action accrues depends upon whether the nuisance is permanent or temporary and abatable. *Rebel v. Big Tarkio Drainage Dist.*, 602 S.W.2d 787, 792 (Mo.App.1980), *overruled on other grounds by Frank v. Envrionmental Sanitation Management*, 687 S.W.2d 876, 880 n. 3 (Mo. banc 1985). The *Rebel* court characterized the two types of nuisance as follows:

> Where the source of the injury is a permanent structure, the injury accrues at completion of installation or when the effect of injury becomes manifest, and the action for recovery must be brought within the period of limitations thereafter. The effect of an adjudication of permanent nuisance is to declare to the tort-feasor an unabated right to continue the trespass. Thus, a permanent nuisance no less than an exercise of eminent domain destroys the estate or beneficial use in the land and entitles the owner to the same measure of compensation: the depreciation in the market value of the land damaged.
>
> The period of limitations as to a temporary nuisance, however, runs anew from the accrual of the injury from every successive invasion of interest. The recovery is for damage actually sustained to the commencement of suit, but not for prospective injury. That is because a temporary nuisance may be abated at any time by a reasonable effort or by an order of the court; but if not, then gives rise to a successive action for the continuance of damage.

*Id.* (citations omitted).

The parties in the instant case dispute whether appellants' allegations concerning the re-channelization of Parsons Creek, if true, would result in a temporary or a permanent nuisance. Appellants argue that a temporary nuisance was created upon the construction of the new channel. Respon-

---

1. Collett subsequently transferred his interest to the Community Bank of Chillicothe which held a mortgage on the property. Community Bank of Chillicothe then sold the property to Matt Parrish.

2. This court will not address Count I because appellants do not assert error on appeal in regard to Count I.

3. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

dents, while denying the existence of a nuisance, assert that if the court finds a nuisance, then it is permanent.

The character of the source of the injury and not the character of the injury determines whether a nuisance is permanent or temporary. *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369, 374 (Mo.App. 1988). "A permanent nuisance must result from a permanent construction which is necessarily injurious as installed not from one which becomes injurious through its use. The distinguishing feature between a permanent and temporary nuisance is the 'abatability' of the nuisance." *Id.* If a fixed injury affects the entire estate, the injury is permanent. *Fletcher v. City of Independence*, 708 S.W.2d 158, 178 (Mo.App.1986). When a nuisance can be reasonably and practicably abated, it is a temporary nuisance. *Id.* It is a question of law, rather than fact, whether a nuisance is permanent or temporary. *Schwartz v. Mills*, 685 S.W.2d 956, 958 (Mo. App.1985).

This court is guided by the decision in *Pinney v. Berry*, 61 Mo. 359 (1875), a case with facts similar to those of the case at bar. The defendant in *Pinney* caused the erection of a dam across the North Fork, causing "the water in the river to flow up a branch running from plaintiff's house down the river," and thus damaging plaintiff's land. The Court found a temporary nuisance because the structure might be removed the day after the verdict. *Id.* at 367. The Supreme Court, in *Shelley v. Ozark Pipe Line Corporation*, 37 S.W.2d 518, 520 (Mo.1931), cited *Pinney* as authority for the proposition that building and maintaining a dam in a river to change the flow of water creates a temporary nuisance. Although *Pinney* was decided in 1875, it has not been overruled and its holding remains consistent with the modern analysis of temporary and permanent nuisance.

Respondents cite more recent cases as authority for their argument that the re-channelization is a permanent nuisance, however, these cases can be distinguished on their facts. *Bunten v. The Chicago, R.I. & P. Ry. Co.*, 50 Mo.App. 414, 423 (Mo.App.1892) (railroad bridge converted to permanent, solid embankment after the space under the bridge was filled in); *Webb v. Union Electric Co. of Missouri*, 223 S.W.2d 13, 17 (Mo.App. 1949) (Bagnell Dam is a permanent obstruction in the Osage River); *Powers v. St. Louis, I.M. & S. Ry. Co.*, 57 S.W. 1090, 1093 (Mo.1900) (railroad embankment is a permanent structure because it is a solid dam intersecting a river and deflecting the flow of the river through a newly constructed canal.) These cases describe structures which do not have the potential to be removed the day after the verdict. These structures were deliberately constructed to be durable, lasting and unalterable. The new channel in the instant case does not have the same durable, unalterable character as the structures in the above cases.

The construction by the Andersons of the new channel on Parsons Creek created a temporary structure which would require little effort to abate. The new channel is made even more temporary by the fact that the Andersons did not receive a permit from the Corps of Engineers, and, as a result, they did not put a channel block at each end of the original channel of Parsons Creek or fill in the old channel. In addition, there was testimony at trial indicating that the original channel has not been completely abandoned because water still flows down it when the new channel is at capacity. Merely closing the new channel by blocking its entrance would reroute the water in Parsons Creek back to the old channel.

Considering the facts in the light most favorable to the judgment, the re-channeling of Parsons Creek by digging a new channel created a temporary structure capable of being abated. Having determined that the nature of the re-channelization is temporary, the statute of limitations provisions applicable to temporary nuisance would apply. This court must examine whether the appellants' action was timely filed. The action is barred if it was not filed within ten years from the last successive invasion of interest. Section 516.010; *Rebel*, 602 S.W.2d at 794. Mr. Campbell testified that, up to the date of trial, water from the new channel continued to overflow onto the Campbells' property. Specific evidence was presented at trial that Parsons Creek flooded the Campbells' timber

land on September 24, 1986. Appellants filed suit on December 2, 1986, well within ten years of the last incident of flooding. From the evidence presented at trial, the appellants' nuisance and injunction causes of action are not precluded by the statute of limitations.

In evaluating the appellants' remaining claims, this court must consider that there has been a change in the law since the appellants' filed this appeal. The Missouri Supreme Court in *Heins Implement Co. v. State Highway Commission*, 859 S.W.2d 681, 690–91 (Mo. banc 1993), adopted the rule of reasonable use to replace the common enemy doctrine in cases involving surface water runoff. The rule of reasonable use provides that "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Id.* at 689 (quoting *Armstrong v. Francis Corp.*, 20 N.J. 320, 120 A.2d 4, 8 (1956)).

At the time of trial in the instant case, the common enemy doctrine was the longstanding rule of law governing surface water runoff in Missouri. The parties presented evidence based on an assumption that the court would apply the common enemy doctrine in deciding the case. The subsequent change in the law creates an issue for this court as to whether *Heins* should be applied retroactively.

In *Sumners v. Sumners*, 701 S.W.2d 720, 722–23 (Mo. banc 1985), the Missouri Supreme Court adopted the following statement of Chief Justice Marshall in *United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), addressing the changes in the law while a case is on appeal:

> It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.

A decision overruling a prior rule of substantive law should generally be applied retroactively. *Sumners,* 701 S.W.2d at 723. In *Sumners,* the Court adopted a three-part test for use in determining whether an overruling decision of the Missouri Supreme Court should be given a prospective only effect. *Id.* at 724. The three prongs of the test are as follows: 1) the decision must establish a new principle of law by overruling clear past precedent; 2) the court must evaluate whether retroactive application will enhance or retard the purpose and effect of the newly announced rule; and 3) the court must balance the interests of those affected by the change in the law, determine the degree to which the parties may have relied upon the previous rule, and weigh the hardship the parties might suffer from retroactive application of the new rule against the hardship to the parties who would be denied the benefit of the new rule. *Id.*

In applying the *Sumners* test to the circumstances in the instant case, this court finds that the decision establishes a new principle of law because it clearly overrules the common enemy doctrine and replaces it with the rule of reasonable use. The *Heins* court stated in its opinion that by adopting the rule of reasonable use, it sought to make the law governing controversies over water uniform since the rights of users of other waters in Missouri are governed by the rule of reasonable use. *Heins,* at 691. Retroactive application will, thus, enhance and serve to further the court's purpose in enacting the new rule. In balancing the interests of those affected by the change in the law and weighing the hardships of the parties if the new rule is applied retroactively, this court finds no evidence that the Anderson brothers relied on the common enemy doctrine in planning the re-channelization of Parsons Creek. Neither does this court find that application of the rule of reasonable use would cause either party undue hardship as long as the cause is remanded for a new trial so that the parties have the opportunity to offer evidence pertinent to the application of the rule of reasonable use.

The Missouri Supreme Court in *Dietz v. Humphreys,* 507 S.W.2d 389, 392 (Mo.1974)

addressed a situation analogous to the circumstances of the instant case, in which the law changed after trial while the case was on appeal. At trial, the parties proceeded under the old theory of law because such theory was not overruled until after the trial. *Id.* The *Dietz* court considered the question of whether, on appeal, the case should be decided according to the old rule of law, applicable at the time of trial, or according to the new rule, applicable at the time of the appeal. *Id.* The court stated the following:

> [W]e are of the opinion that it would be improper and unfair to the parties, to decide this case on the record made when all the parties, in the presentation of their evidence, and the trial court, in entering its findings and conclusions of law, were operating pursuant to the rule announced in the [overruled] cases.

*Id.*

The *Dietz* court reversed and remanded the case so that the parties could amend their pleadings and present other or additional evidence before the case was again submitted to the trial court for a decision according to the new rule of law. *Id.*

Such is the proper procedure in the instant case. The cause is reversed and the case is remanded for a new trial on Counts II and III so that the parties may submit evidence enabling the trial court to decide the case under the new rule of law, the rule of reasonable use. The cause is affirmed as to Count I. This court does not reach additional claims raised by appellants because such claims are rendered moot by the order of remand.

All concur.