**Randall J. SHADE, et al., Appellants,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, et al., Respondents.**

**No. WD 58652.**

Missouri Court of Appeals,
Western District.

Oct. 30, 2001.

As Modified March 5, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 2002.

Philip R. Holloway, Kansas City, for appellants.

William D. Farrar, Sr. Asst. Counsel, Jay L. Smith, Asst. Chief Counsel, Lee's Summit, for respondent MHTC.

Before: LAURA DENVIR STITH, P.J.,[1] and SMART and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Appellants[2] appeal from the trial court's grant of the Missouri Highway and Transportation Commission's motion for summary judgment on Appellants' petition for damages resulting from flooding on Appellants' property. Appellants raise three points on appeal. First, Appellants contend that the trial court erred in granting summary judgment in favor of the Commission because the court erroneously held that the statute of limitations that applies to a cause of action for inverse condemnation is five years pursuant to § 516.120,[3] and rather should have applied a statute of limitations of ten years, as set forth by the Missouri Supreme Court in *Doyle v. Kansas City and Southern Railway Company*, 113 Mo. 280, 20 S.W. 970 (1892). Second, Appellants contend that the trial court erred in granting summary judgment in favor of the Commission because the trial court erroneously held that the flood events in 1996 and 1998 did not establish new causes of action against the Commission, and further erroneously held that the statute of limitations began to run when the 1993 flood event occurred. Third, Appellants claim that the trial court erred in granting summary judgment in favor of the Commission against the subsequent purchasers, Randall Shade, Jennie Shade, Jeffrey Haynes, and Joyce Haynes, holding that they have no cause of action, because the court failed to consider their cause of action for damages based on the personal property taken by the Commission as a result of the 1996 and 1998 flood events.

We affirm in part, reverse in part, and remand.

## Facts

This case arises from a construction project engaged in by the Respondent Missouri Highway and Transportation Commission on Missouri Highway 210 west of Fishing River and east of the City of Orrick in Ray County, Missouri. This reconstruction project by the Commission involved elevating a new portion of Missouri Highway 210 to a height that exceeded the elevation of old Missouri Highway 210. The permanent grading was completed and accepted on April 10, 1987.

Appellants Tula D. Jeffries, Robert D. Claypole, Doris L. Claypole, Edgar Lee Easley, Lola L. Easley, and Randall L.

1. Judge Stith participated in the case at the time of submission as a member of the court and was specially assigned to remain on this case by order of the Supreme Court after her appointment to the Supreme Court.

2. Appellants are Tula D. Jeffries, Robert D. Claypole, Doris L. Claypole, Edgar Lee Easley, Lola L. Easley, Randall L. Easley, Randall J. Shade, Jennie A. Shade, Jeffrey D. Haynes, Joyce A. Haynes, Easley 210 Auto Auction,

and SACO Petroleum, Inc. Although not mentioned specifically in either party's brief, the first amended petition alleged that Easley 210 Auto Auction and SACO Petroleum, Inc. were tenants on part of the property at issue and sustained damages to personal property as a result of the October 4, 1998 flood.

3. All statutory references are to RSMo 1994, unless otherwise indicated.

Easley were the owners of real property adjacent to the Commission's right of way and the new construction of Missouri Highway 210.

On August 12, 1993, Appellants' property adjacent to the reconstruction of Missouri Highway 210 was flooded under a substantial amount of water, and Appellants suffered substantial damage in personal property and real property.

On April 9, 1994, Tula D. Jeffries sold her property to Randall J. Shade and Jennie A. Shade.

On June 17, 1996, Appellants' property adjacent to the reconstruction of Missouri Highway 210 was flooded under a substantial amount of water, and Appellants suffered substantial damage in personal property and real property.

On May 22, 1997, Robert D. Claypole and Doris L. Claypole sold their real property to Jeffrey D. Haynes and Joyce A. Haynes.

On October 4, 1998, there was a third flood, which put Appellants' property under a substantial amount of water and caused substantial damage to Appellants' personal property and real property.

Appellants filed a petition for damages on February 17, 1999, and subsequently amended that petition on July 12, 1999. Appellants' lawsuit was pursued under a theory of inverse condemnation against the Commission, alleging that the reconstruction of Missouri Highway 210 materially changed and altered the flow of surface water from Appellants' property and property surrounding Appellants' property. Appellants further alleged that the material change in surface water by the Commission's reconstruction project resulted in the flooding of Appellants' property on August 12, 1993, June 17, 1996, and October 4, 1998. Appellants further alleged that the change in the flow of surface

water by the Commission was unreasonable and constituted a wrongful appropriation of Appellants' property in violation of Article I, § 26 of the Constitution of Missouri.

On July 19, 1999, the Commission filed its answer to Appellants' amended petition, raising the affirmative defense that the statute of limitations, § 516.120, barred Appellants' cause of action.

On July 28, 1999, Appellants filed a motion to strike the paragraphs of the Commission's answer setting forth the statute of limitations as an affirmative defense.

The issues were briefed and argued before the court on August 20, 1999. The court denied Appellants' motion to strike the paragraphs of the Commission's answer setting forth the affirmative defense of the statute of limitations. The Commission filed a motion for summary judgment as to each count of Appellants' first amended petition for damages. On April 26, 2000, the trial court entered its order granting the Commission's motion for summary judgment on each count of Appellants' petition. This appeal follows.

### Standard of Review

 Summary judgment will be affirmed on appeal if this court determines that no genuine issues of material fact exist and the movant has a right to judgment as a matter of law. *Bryan v. Mo. State Highway Patrol*, 963 S.W.2d 403, 406 (Mo.App. W.D.1998). "Appellate review of the propriety of summary judgment is de novo." *Id.* We view the record in the light most favorable to the party against whom summary judgment was entered, and that party is afforded all reasonable inferences that may be drawn from the evidence. *Id.*

### Point I

The first point on appeal is that the trial court erred in granting summary judg-

ment in favor of the Commission because the court erroneously held that the statute of limitations that applies to a cause of action for inverse condemnation is five years pursuant to § 516.120, and rather should have applied a statute of limitations of ten years, as set forth by the Missouri Supreme Court in *Doyle v. Kansas City & Southern Railway Co.*, 113 Mo. 280, 20 S.W. 970 (1892).

The trial court held that the statute of limitations that applies to the inverse condemnation claims in this case bars Appellants from recovery because more than five years passed from the date of the first flood and the filing of Appellants' petition for damages. The main issue to be decided is what statute of limitations applies to inverse condemnation actions.

Appellants contend that the trial court's reliance on § 516.120 is erroneous, and the ten-year statute of limitations set forth in *Doyle* is the correct one. In *Doyle v. Kansas City & Southern Railway Co.*, 113 Mo. 280, 20 S.W. 970 (1892), a railroad constructed a road across the plaintiffs' property, damaging it. The plaintiffs brought an action against the railroad seeking to recover the value of the land taken by the railroad for a right of way, and for damages to the residue of the land. *Doyle*, 20 S.W. at 970. The trial court found that the statute of limitations for the plaintiffs' action was five years. *Id.* at 971. The supreme court disagreed, finding that the action, if successful, would vest in the railroad an easement in the land, as in a normal condemnation proceeding. *Id.* The court held that "the five-years bar, which may be appropriately invoked in simple actions of trespass, does not apply, and cannot apply, to a case of this sort, where the result of the judgment and its satisfaction will be to vest the title in the defendant company as effectually as if resultant from regular proceedings for condemna-

tion." *Id.* Instead, the court applied a ten-year limitation period, which, in effect, afforded the plaintiffs a legal recourse within the ten years it would take for the defendant to obtain an easement through adverse possession. *Id.* Appellants argue that *Doyle* is similar to the case at bar, in that their action in this case, if successful, would serve to vest in the Commission a flowage easement in the land.

The Commission argues that *Doyle* is distinguishable from the present case for two reasons: 1) the source of the injury in *Doyle* was located on the landowners' property; and 2) the railroad in *Doyle* was taking the title to the property from the landowner. The Commission argues that because in the present case, the alleged source of the injury is located on lands owned by the entity with the power of eminent domain with the resulting injury occurring on the abutting landowners' property, and because title would not be taken from the landowners, the trial court properly applied the five-year statute of limitations.

The Commission contends that *DeGeofroy v. Merchants' Bridge Terminal Railway Company*, 179 Mo. 698, 79 S.W. 386 (1903), rather than *Doyle*, is the controlling case. In *DeGeofroy*, the appellants brought an action for damages to their property resulting from the construction and operation of a railroad in front of their property. *DeGeofroy*, 79 S.W. at 387. The trial court sustained a demurrer to the appellants' petition on the ground that the petition did not state facts sufficient to constitute a cause of action. *Id.* The supreme court considered whether the appellants' action was barred by the statute of limitations. *Id.* at 394. The court found that the railroad's structure was of a permanent character, and the injury to the appellants' property was susceptible of as-

certainment when it was completed. *Id.* The court stated as follows:

> In *James v. Kansas City,* 83 Mo. 567, it was said, "Where the damage is complete by the original act of trespass, the statute begins to run from that time." In this case the structure was permanent and complete in 1890. The theory of the plaintiffs is that they were entitled to damages for the construction of such permanent structure, and that theory is correct, and hence they were required to bring their action within five years after its completion. Their damages could have been estimated in one action at that time, and the five years' limitation must and does control. Rev. St. 1899, § 4273, cl. 4; *Smith v. Sedalia,* 152 Mo. 283, 53 S.W. 907, 48 L.R.A. 711.

*Id.*

In *James v. City of Kansas,* 83 Mo. 567, 569 (Mo.1884), the appellant brought a suit for trespass against the City for damages to his property that occurred as a result of the City building a sewer on his property. Citing the predecessor to § 516.120, the court held that an action for trespass to real estate must, by statute, be commenced within five years. *James,* 83 Mo. at 569. The court then went on to discuss when the statute of limitations began running, finding that the answer depended on whether the trespass was continuing or whether it was permanent and the damage was complete by the original act of trespass. *Id.* at 569–70.

In *Smith v. City of Sedalia,* 152 Mo. 283, 53 S.W. 907, 911 (1899), the court, in discussing *James,* stated that in *James* "[i]t was held that that injury was a permanent one, manifest from the beginning, and susceptible of being measured in damages once for all, and suit on it was barred in five years." See also the following cases, citing *James* and *Smith* for the rule that the five-year statute of limitations applies: *Frederick v. City of Joplin,* 201 S.W. 1147, 1148 (Mo.App.1918); *Hayes v. St. Louis & San Francisco R.R. Company,* 177 Mo. App. 201, 162 S.W. 266, 272 (1913); *DeGeofroy,* 79 S.W. at 394. *See also Bunten v. The Chicago, Rock Island & Pacific Ry. Co.,* 50 Mo.App. 414, 424 (1892) (simply stating that the statute of limitations is five years); *Webb v. Union Elec. Co. of Mo.,* 240 Mo.App. 1101, 223 S.W.2d 13, 17 (1949) (citing § 1014 RSMo 1939, the predecessor to § 516.120, for the rule that five-year statute of limitations applies); *Kent v. City of Trenton,* 48 S.W.2d 571, 576 (Mo.App.1931) (finding that the five-year statute of limitations applies and citing *DeGeofroy* and other cases, and finding that "[t]he theory upon which the ten-year period of limitation was applied in the case of *Doyle v. Kansas City & S. Railway Co.,* 113 Mo. 280, 20 S.W. 970, has been ignored in later cases and not followed, but denied by necessary implication as evidenced by the cases cited, and by *Rivard v. Missouri Pac. Railway Co.,* 257 Mo. 135, 170, 165 S.W. 763 et seq., 257 Mo. 135, 165 S.W. 763, 772").[4]

As the parties point out, inverse condemnation claims, through the years, have been brought under a number of theories, including nuisance, negligence and trespass. When the claims have been brought as nuisance actions, Missouri courts, including this court, have imposed different statutes of limitations depending on the nature of the nuisance. The courts have imposed a five-year statute of limitations for permanent nuisances and a ten-year

---

**4.** *James* was a suit for trespass to remedy "tortious acts," clearly governed by the five-year statute then as it would be now. Those cases above that cite *James* do not distinguish actions for trespass or nuisance from an action for inverse condemnation in applying a limitation period.

statute of limitations for temporary nuisances. *See Campbell v. Anderson,* 866 S.W.2d 139, 142 (Mo.App. W.D.1993) (finding that five-year statute of limitations in § 516.120 applies to permanent nuisances and ten-year statute of limitations in § 516.010 applies to temporary nuisances); *Rebel v. Big Tarkio Drainage Dist. of Holt City,* 602 S.W.2d 787, 794 n. 7 (Mo.App. W.D.1980), *overruled on other grounds by Frank v. Envtl. Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 880 n. 3 (Mo. banc 1985) (finding that "[t]he statute of limitations for an abatable nuisance is that prescribed for the acquisition of title to land—or ten years" under § 516.010 RSMo 1978, while "[t]he statute of limitations for a permanent nuisance—by the application of § 516.120, RSMo 1978—is five years"); *City of Fredericktown v. Osborn,* 429 S.W.2d 17, 24 (Mo.App.1968).

Appellants argue that the cases prior to *Heins Implement Company v. Missouri Highway & Transportation Commission,* 859 S.W.2d 681 (Mo. banc 1993), applying a five-year statute of limitations to inverse condemnation cases and analyzing inverse condemnation claims in the context of permanent nuisances, should no longer be followed in light of *Heins.* In *Heins,* 859 S.W.2d at 684, landowners sued the Missouri Highway & Transportation Commission and others after a highway bypass project caused flooding on their property. The Missouri Supreme Court held that "when private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation." *Id.* at 693. The court held that because the Commission was empowered to exercise the right of eminent domain, the trial court did not err in dropping the appellants' nuisance and negligence claims while retaining their inverse condemnation claims. *Id.* at 694; *see also Barr v. Kamo Elec. Corp., Inc.,* 648 S.W.2d 616, 618–19

(Mo.App. W.D.1983) (finding that when an entity having the power of eminent domain commits an act amounting to a permanent nuisance on private land, the proper cause of action is inverse condemnation). The effect of the court's holding in *Heins* was to remove inverse condemnation actions from the realm of tort liability and set them in a constitutional context, i.e., preventing the taking of private property for public use without compensation. Appellants argue that in light of *Heins,* the ten-year statute of limitations should apply to inverse condemnation cases such as the one at bar. To hold otherwise and apply any shorter statute of limitations would allow a public entity to effectively gain title or some property interest of the Appellants without formal condemnation proceedings or without a passage of time greater than that allowed under the adverse possession statute.

■ Appellants further contend that § 516.010 applies to inverse condemnation claims. Section 516.010 provides as follows:

No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, whether citizen, denizen, alien, resident or nonresident of this state, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

We find that § 516.010 does not apply to inverse condemnation actions. An inverse condemnation action is not an action for the recovery or for the recovery of the possession of any lands, tenements or hereditaments.

■ Appellants also ask this court to consider § 516.110, which provides that "[a]ctions for relief, not herein otherwise provided for" shall be commenced within ten years. We find that this "catch-all" statute does not apply to inverse condemnation actions. *See* Charles C. Marvel, Annotation, *State Statute of Limitations Applicable to Inverse Condemnation or Similar Proceedings by Landowner to Obtain Compensation for Direct Appropriation of Land Without the Institution or Conclusion of Formal Proceedings Against Specific Owner*, 26 A.L.R.4th 68 § 7[c], and cases cited therein.

The Commission contends that § 516.120 applies to inverse condemnation claims. Section 516.120 provides that the following actions must be brought within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;

(2) An action upon a liability created by a statute other than a penalty or forfeiture;

(3) An action for trespass on real estate;

(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

Several Missouri cases have held that the five-year statute of limitations of § 516.120 applies to inverse condemnation claims, without stating which specific subsection of the statute applies. *Rose v. City of Riverside,* 827 S.W.2d 737, 738 (Mo.App. W.D.1992); *Don Roth Dev. Co., Inc. v. Mo. Highway & Transp. Comm'n,* 668 S.W.2d 177, 179 (Mo.App. E.D.1984); *see also Lewis v. City of Potosi,* 317 S.W.2d 623, 628–29 (Mo.App.1958).

Citing *Don Roth,* the court in *Rose* stated that the five-year statute of limitations in § 516.120 applies to inverse condemnation actions. *Rose,* 827 S.W.2d at 738. Citing *Lewis,* the court in *Don Roth* stated that "[i]f we assume for the purposes of this discussion that the action is in inverse condemnation, the five year statute of limitations, § 516.120, RSMo 1978, would apply." *Don Roth,* 668 S.W.2d at 179. It appears, then, that this modern, but pre-*Heins,* line of cases holding that § 516.120 applies to inverse condemnation actions has its genesis in *Lewis.*

In *Lewis,* the plaintiff brought an action against the defendant City for damages caused to his property by the City's operation of a sewage plant. *Lewis,* 317 S.W.2d at 625. The trial court found in favor of the plaintiff, and the City appealed, contending that the trial court erred in overruling its motion for a directed verdict because the action was barred by the five-year statute of limitations in § 516.120. *Id.* at 628. Although the court of appeals never specifically stated that the five-year statute of limitations applies to actions in inverse condemnation, the court, by necessary implication, did find that the five-year statute applied, both in its holding that the suit was filed less than five years from the date of injury and therefore the court did not err in overruling the City's motion for directed verdict, and in its holding that a jury instruction was erroneous because it had the effect of extending the statute of limitations beyond five years. *Id.* at 628–

29. From what we can determine from the opinion in *Lewis,* it does not appear that the proper statute of limitations to be applied in inverse condemnation actions was at issue in the case, and the court did not provide any reasoning for its finding that § 516.120 applies in such cases.

■ We find that § 516.120 does not apply to inverse condemnation claims in which compensation is sought for the taking of real property. Sections 516.120(3), (4), and (5) clearly do not apply to real property inverse condemnation claims. *But see DeGeofroy,* 79 S.W. at 394 (citing § 4273 cl. 4 RSMo 1899, the predecessor to § 516.120, which provides that the five-year statute of limitations applies to "[a]n action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated").

■ We are then left with § 516.120(1) and (2), which the Commission contends apply to inverse condemnation. Specifically, the Commission contends that the allegation of unreasonable actions by the Commission damaging Appellants' property necessarily invokes the issue of "liability" as contemplated by § 516.120(1). However, we have not found any authority that applies this subsection to inverse condemnation claims. The majority of the cases we have found invoking § 516.120(1) concern contractual claims and other similar claims. We reject the Commission's argument that the mere use of the words "liable" and "liability" in *DeGeofroy* brings inverse condemnation claims within the ambit of § 516.120(1). We also find that § 516.120(2) does not apply to inverse condemnation actions. The Commission ar-

gues that an action for inverse condemnation has its genesis in § 227.120, which grants it the power of eminent domain, and therefore an inverse condemnation action is an action founded "upon a liability created by a statute" within the meaning of § 516.120(2). We disagree. The prohibition on taking private property for public use without compensation, and consequently an inverse condemnation action, is not based on any statute as contemplated by § 516.120(2), but emanates from the Missouri and United States Constitutions. *See Clark v. Water Comm'rs of Amsterdam,* 148 N.Y. 1, 42 N.E. 414, 416 (1895); *Land v. Wilmington & W.R. Co.,* 107 N.C. 72, 12 S.E. 125, 126 (1890).

Article I, § 10 of the Missouri Constitution provides "[t]hat no person shall be deprived of ... property without due process of law." Article I, § 26 of the Missouri Constitution provides "[t]hat private property shall not be taken or damaged for public use without just compensation." The Fourteenth Amendment to the United States Constitution prohibits a state from depriving "any person of ... property, without due process of law." The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use "without just compensation." [5]

[8] No limitation period is contemplated by either the United States or Missouri Constitutions, and we find no specific limitation period set forth in a statute that applies to real property inverse condemnation claims. We hold that the statute of limitations in real property inverse condemnation cases such as the one at bar must not be shorter than that required for the entity with the power of eminent do-

**5.** "The Fourteenth Amendment to the United States Constitution makes the Fifth Amendment's 'taking' clause applicable to Missouri." *City of Excelsior Springs v. Elms Redevelopment Corp.,* 18 S.W.3d 53, 58 (Mo.App. W.D. 2000).

main to obtain a prescriptive easement on the property. The time required to obtain a prescriptive easement is ten years. *Phillips v. Sommerer*, 917 S.W.2d 636, 638 (Mo.App. W.D.1996). The statute of limitations for real property inverse condemnation actions, then, must also be ten years. *See Barker v. St. Louis County*, 340 Mo. 986, 104 S.W.2d 371, 374–77 (1937) (finding that a state statute was invalid to the extent that it permitted private property to be taken for public use in a period shorter than that required to adversely possess the property). "To hold otherwise would be to allow the taking entity to effectively gain title, or at least some property interest, short of the prescriptive period." *Corbell v. State ex rel. Dept. of Transp.*, 856 P.2d 575, 579 (Okl.App.1993); *Underwood v. State ex rel. Dept. of Transp.*, 849 P.2d 1113, 1117 (Okl.App. 1993); *see also* 26 A.L.R.4th 68 §§ 6[a] and 7[a], and cases cited therein.

We hold that the trial court erroneously granted the Commission's motion for summary judgment on the basis that the statute of limitations for an inverse condemnation action involving real property was five years, and that the statute of limitations had run in the present case. Point I is granted.[6]

### Point II

The second point on appeal is that the trial court erred in granting summary judgment in favor of the Commission because the trial court erroneously held that the flood events in 1996 and 1998 did not establish new causes of action against the Commission, and further erroneously held that the statute of limitations began to run when the 1993 flood event occurred.

First, we address the issue of whether each flood event created a new cause of action. This determination depends upon the type of damage sustained by the real estate, i.e., if it is permanent or temporary.

Whether a nuisance is permanent or temporary depends upon the character of the source of the injury. *Campbell*, 866 S.W.2d at 143. If the source of the injury "can be reasonably and practicably abated, it is a temporary nuisance." *Id.* A temporary nuisance has been described as one where the structure or nuisance might be removed the day after a verdict. *Id.* An offending structure deliberately constructed to be durable, lasting and unalterable creates a permanent nuisance. *Id.*

If the damage to the property is permanent, the cause of action accrues when the effect of the injury becomes manifest. *Id.* at 142 (citation omitted). The damage "will admit of but one recovery, which will obviously include all damages, past, present, and prospective." *Doyle*, 20 S.W. at 971. On the other hand, because a temporary nuisance can be abated at any time, the period of limitations "run anew from the accrual of the injury from every successive invasion of interest." *Campbell*, 866 S.W.2d at 142 (citation omitted).

In summary, whether successive causes of action accrue for damages to real or personal property due to successive invasions of real property depends on the character of the source of the injury to the property: if temporary, yes; if permanent, no. The trial court determined that the structure built by the Commission is durable, lasting, unalterable, and thus permanent. We will not disturb that ruling. Appellants may pursue but one of action which, if successful, would lead to but one

6. This opinion has been reviewed and approved by order of the court en banc.

recovery. We affirm the trial court on this issue.

■ Next we turn to the issue of when the statute of limitations began to run. Reasoning that the construction of the highway was a permanent fixture rather than a temporary structure, the trial court held that the statute of limitations in this case started to run no later than August 12, 1993, five years from the date the first flood occurred on Appellants' property.

■ A cause of action for inverse condemnation accrues once the fact of damage is capable of ascertainment. *See Heins*, 859 S.W.2d at 693 n. 17; *Crede v. City of Oak Grove*, 979 S.W.2d 529, 534 n. 3 (Mo.App. W.D.1998). "[T]he injury accrues at completion of installation *or* when the effect of the injury becomes manifest. . . ." *Rebel*, 602 S.W.2d at 792 (emphasis added). This determination will turn on the facts of each case. In a situation involving successive floods, the damage may not be ascertainable on the date of the first flood. It may well be that it would only become "apparent by the passage of time that the intermittent flooding was of a permanent nature." *Barnes v. United States*, 210 Ct.Cl. 467, 538 F.2d 865, 873 (Ct.Cl.1976). Accrual date of a cause of action does not arise until the damages and *the cause* of the damages are reasonably ascertainable. *In re Tetracycline Cases*, 729 F.Supp. 662, 665 (W.D.Mo.1989). Damages are capable of ascertainment to initiate the running of the limitation period when a plaintiff *with a recognized theory of recovery* sustains damage. *Wallace v. Helbig*, 963 S.W.2d 360, 360 (Mo.App.E.D.1998).

The Commission argued to the trial court that it was entitled to summary judgment for two reasons: the statute of limitations had run on Appellants' claims and personal property was not compensable in an inverse condemnation action. The Commission's motion states that the Appellants' land was flooded in August 1993,

and their action was filed in 1999, more than five years later, so their claims are barred. The motion does not deal with the two subsequent floods or directly with the issue of when the damage was ascertainable. The motion does say that "plaintiff clearly had notice their land was subject to flooding" but does not address whether the *cause* of the damage was ascertainable or when the Appellants had a recognized legal theory of recovery.

The date when the damage could have been ascertained is moot as to the real property because, pursuant to our holding in Point I, the statute of limitations has not run on Appellants' claims, regardless of whether those claims stemmed from the 1993, 1996 or 1998 floods. However, the inquiry is still relevant as to the claims for damages to personal property because, later in this opinion, we hold that the limitation period for personal property is five years. It thus becomes important to establish the date the injury and its cause could have been ascertained because, if it was when the initial flooding occurred in 1993, the personal property claims were filed out of time.

Appellants' response to the motion for summary judgment asserted, inter alia, that there was a genuine issue of material fact regarding when their damages were capable of ascertainment. They assert that only after subsequent flooding could it be determined with some certainty that the flooding would be intermittent and permanent and that the highway construction was the source of the injury. They point to the Commission's pleadings in which it denies that the elevated highway is the cause of the flooding, and Appellants attach to their response deposition testimony from a previous matter where a Commission witness testified that the highway design was sufficient and that the floods were a result of unusual rainfall.

When reviewing appeals from summary judgments we accord the non-moving party "the benefit of all reasonable inferences from the record." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). The pleadings present a material dispute regarding a crucial issue, i.e., when the cause of action was capable of ascertainment. The trial court undoubtedly was not intensely focused on this issue because its determination on the statute of limitations period would seem to moot the issue. However, given our ruling regarding the limitation period, the dispute is brought front and center.

Our review of the record reveals nothing, e.g., verified motions, affidavits or testimony upon which sufficient facts could be developed to determined with any degree of certainty when the various causes of actions were capable of ascertainment. Accordingly, the trial court's determination that Appellants' causes of actions accrued on August 12, 1993 is reversed and the issue is remanded to allow the issue to be resolved after the development of relevant and necessary facts during discovery or trial.

The judgment on this issue is reversed and the cause is remanded.

### Point III

The third point on appeal is that the trial court erred in granting summary judgment in favor of the Commission against the subsequent purchasers, Randall Shade, Jennie Shade, Jeffrey Haynes, and Joyce Haynes, holding that they have no cause of action, because the court failed to consider their cause of action for damages based on the personal property taken by the Commission as a result of the 1996 and 1998 flood events.

In Point II we decided that, since the source of the alleged injury is permanent, there is but one cause of action available to Appellants. We remanded to the trial court for the determination of when that cause of action accrued. We now determine whether damage to personal property is compensable in an inverse condemnation case.

In their amended petition, Appellants sought compensation for damages to personal property, as well as real property. In support of their point on appeal, Appellants cite *Wolfe v. State ex rel. Missouri Highway and Transportation Commission*, 910 S.W.2d 294 (Mo.App. W.D.1995), and *Springfield Southwestern Railway Company v. Schweitzer*, 173 Mo.App. 650, 158 S.W. 1058 (1913).

In *Wolfe*, the plaintiffs sued the Commission for the value of crusher rock belonging to the Wolfes, which the Commission acquired and used to build a highway. *Wolfe*, 910 S.W.2d at 295. Judgment was entered in favor of the Wolfes, and the Commission appealed. *Id.* We specifically stated that "MHTC does not question the Wolfes' utilization of inverse condemnation as the proper theory of recovery in an action concerning personal property, as opposed to real property, so such issue is not addressed." *Id.* at 299 n. 3.

In *Schweitzer*, the issue before the court was whether a tenant whose leased property is taken pursuant to condemnation proceedings may be reimbursed for expenses incurred in removing his personal property from the place taken, and whether he is entitled to recover for the damages sustained by the personal property in moving it by breakage and deterioration. *Schweitzer*, 158 S.W. at 1059. The court held that expenses for *removal* of personal property are not compensable in an inverse condemnation proceeding. *Id.* at 1061. However, the court found that the tenant was entitled to damages sustained

to its machinery and property by reason of its dismantling and removal. *Id.*

The Commission argues that damages to personal property are not compensable in an inverse condemnation proceeding. In support of its position, the Commission cites *Lewis v. City of Potosi*, 317 S.W.2d 623 (Mo.App.1958), *Stewart v. City of Marshfield*, 431 S.W.2d 819 (Mo.App.1968), and *Byrom v. Little Blue Valley Sewer District*, 16 S.W.3d 573 (Mo. banc 2000).

In *Lewis*, an inverse condemnation case, the court held that jury instructions were erroneous because they permitted the jury to consider as elements of the plaintiff's damage the value of the cattle and hogs that died as a result of the polluted water the city emptied onto the plaintiff's property. *Lewis*, 317 S.W.2d at 629. The court held that "[s]uch items of damage are not recoverable in an action such as the one in the case at bar, which is to be considered as an action in the nature of a condemnation proceeding." *Id.* The court stated that the plaintiff's loss by reason of the death of his livestock was not recoverable as a separate, independent item of damage. *Id.* The court in *Stewart* reached a similar conclusion, citing *Lewis*. *Stewart*, 431 S.W.2d at 824–25. *Byrom* merely stands for the proposition that recovery for personal *injuries* in an inverse condemnation case is inappropriate. *Byrom*, 16 S.W.3d at 578.

As previously discussed, Article I, § 10 of the Missouri Constitution provides "[t]hat no person shall be deprived of . . . property without due process of law." Article I, § 26 of the Missouri Constitution provides, "[t]hat private property shall not be taken or damaged for public use without just compensation." The Fourteenth Amendment to the United States Constitution prohibits a state from depriving "any person of . . . property, without due process of law." The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use "without just compensation." Nothing in these constitutional provisions limits inverse condemnation actions to real property. *See Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1285 (7th Cir.1993). Furthermore, the Missouri Constitution prohibits not only *taking* private property without just compensation, but *damaging* private property as well.

Section 227.120, the relevant eminent domain statute, provides that the Commission "shall have power to purchase, lease, or condemn, *lands* in the name of the state of Missouri." (Emphasis added.) Although the statute is specifically limited to lands (real property), we find such fact irrelevant. The prohibition on taking or damaging personal property stems from constitutional, not statutory, law. *Sutfin v. State*, 261 Cal.App.2d 50, 67 Cal.Rptr. 665, 668 (1968); *Flatt v. City of Brooksville*, 368 So.2d 631, 632 (Fla.Dist.Ct.App. 1979).

Other jurisdictions have considered this issue and have held that damages to personal property are compensable in an inverse condemnation proceeding. *See Warner/Elektra/Atlantic Corp. v. County of DuPage, Ill.*, 762 F.Supp. 784, 786–87 (N.D.Ill.1991); *Warner/Elektra/Atlantic Corp. v. County of DuPage, Ill.*, 771 F.Supp. 911, 914 (N.D.Ill.1991); *Sutfin*, 67 Cal.Rptr. at 666–68; *Flatt*, 368 So.2d at 632; *Hawkins v. City of La Grande*, 102 Or.App. 502, 795 P.2d 556, 559 (1990), *aff'd in part, rev'd in part on other grounds*, 315 Or. 57, 843 P.2d 400 (1992); *Shelby County v. Barden*, 527 S.W.2d 124, 132 n. 4 (Tenn.1975). For the reasons discussed above, we agree.

■ However, we find the statute of limitations that applies to inverse condem-

nation claims seeking compensation for damages to personal property differs from the statute of limitations that applies to inverse condemnation claims seeking compensation for the taking of real property. Of course, the previously discussed relationship between relationship between prescriptive easement and a limitation period regarding real property is inapplicable to personal property. And, unlike real property, a specific statute of limitations exists regarding injury to personal property. Section 516.120(4) provides that "[a]n action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated" must be brought within five years. This statute would apply to inverse condemnation claims involving personal property. Therefore, we find that the statute of limitations for inverse condemnation actions seeking compensation for damage to personal property is five years. Depending on how the issue of when the cause of action accrued is resolved on remand, Appellants may be entitled to pursue their claim for damages to personal property.

The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

LAURA DENVIR STITH, P.J., and SMART, J., concur.