**ROBERT L. BYROM, et al., Respondents,**

v.

**THE LITTLE BLUE VALLEY SEWER DISTRICT, et al., Appellants.**

No. SC 82039.

Supreme Court of Missouri, En Banc.

April 25, 2000.

Rehearing Denied May 30, 2000.

Spencer J. Brown, Brent C. Coonrod, Thomas F. Gordon, Kansas City, for Appellants.

Jimmie D. James, M. Ellen Bigge, Independence, for Respondents.

RONNIE L. WHITE, Judge.

The Little Blue Valley Sewer District (Sewer District) appeals the judgment of the trial court awarding damages to Robert L. Byrom and other residents of the

Atherton community (Residents) in their suit for nuisance and inverse condemnation. The Sewer District claims the Residents' nuisance suit was barred by sovereign immunity. It also claims that even if the residents were entitled to recover for inverse condemnation, the trial court erred in computing damages. Reversed.

## I. BACKGROUND

The Sewer District is a political subdivision of the State of Missouri, created, existing, and operating under water pollution provisions of chapters 204 and 644, RSMo. The Sewer District has operated a wastewater treatment plant in Jackson County since 1985, approximately two miles from Atherton, Missouri. Raw industrial and residential sewage, consisting in part of human waste from more than 300,000 people, flows into the plant. Some of the sewage is "digested" by microscopic organisms in aeration clarification basins, yielding clean water that is returned to the Missouri River and sludge. The sludge is dried out in a decant tank and burned in an incinerator at the plant.

The Residents all have lived, for varying lengths of time, within two miles of the plant since it opened. They and other non-party residents testified at trial about the foul odors produced by the plant. They smelled rotten eggs from the hydrogen sulfide emitted by the sewage, sulfur from the sulfur dioxide in smoke emitted by the incinerator, ammonia, and smells described as burnt feathers, an overused outhouse, and chemical smells. They testified they experienced some or all of the following physical effects caused by these odors: nausea, headaches, loss of sleep and appetite, runny noses, and watery and itchy eyes. Due to the unpredictability of the odors, the Residents also lost the use and enjoyment of their homes because they often could not engage in outdoor activities or invite guests to their homes for outdoor socializing. While the Residents were not constantly bothered by the odors, the trial court found most suffered

these injuries between twelve and twenty days each month they lived near the plant.

The Residents called frequently to the plant and the Missouri Department of Natural Resources (MDNR) to complain between 1985 and trial. During that time, MDNR issued numerous notices of excess emission because the strength of the odor violated state clean air regulations. MDNR also cited the Sewer District multiple times for violations of these regulations. At different times and to varying degrees, multiple parts of the plant caused odor problems, including the intake area, peak flow clarifier, sludge holding tank, decant tank, and incinerator. A review of the trial transcript also shows that before construction the Sewer District did not expect odor to be a problem for its neighbors. Once it realized a problem existed, the Sewer District believed it could be solved. The Sewer District regularly assured the Residents and the MDNR there would be no odor problem and that it would fix the plant to stop the odors. It also consistently modified and replaced the equipment and capabilities of the plant in attempt to stop the odors.

The Residents sued the Sewer District in 1994. They brought a temporary nuisance claim for general damages and partial and total taking claims in inverse condemnation. In their petition, they alleged the Sewer District negligently operated the plant in a dangerous condition. Thus, they appeared originally to have intended to litigate a *tort* claim for their *personal injuries* under section 537.600.1, RSMo 1994, in addition to a *condemnation* claim for their *property* damage. The trial court found the plant was in a "dangerous condition at the time of the injury due to offensive, noxious and potentially dangerous emissions emanating from defendant's plant." It found the Residents' physical injuries and their loss of the use and enjoyment of their homes were "directly attributable and resulted directly from the dangerous condition of defendant's treatment plant." The trial court also found

the dangerous condition created a reasonably foreseeable risk of injury of the kind incurred and the Sewer District knew of the dangerous condition in time to have taken measures to protect against it. It never found, however, the Sewer District acted negligently, nor do the Residents make any such claim on appeal.

The trial court awarded all the Residents who suffered physical injuries from the odors *per diem* compensation for their physical suffering and loss of the use and enjoyment of their property. It appears the award was based on inverse condemnation, as opposed to a personal injury tort, because the trial court concluded, "the doctrine of sovereign immunity is inapplicable to plaintiffs' claim," which the Residents reiterate on appeal. It also concluded the Residents amended their pleadings at the end of trial to rely exclusively on inverse condemnation. This conclusion seems consistent with the position of the Residents on appeal that they brought a nuisance claim only for the loss of use and enjoyment of their *property* caused by the odors. On appeal, the Residents disclaimed that sovereign immunity or negligence mattered to their claim for inverse condemnation. They also explicitly asserted that whether the sewage plant was negligently operated in a dangerous condition was immaterial to their inverse condemnation claim. Finally, at oral argument, counsel for the Residents admitted he abandoned a negligence suit based in tort before trial began in this case.

■ By emphasizing their property damage, amending their pleadings to conform to an inverse condemnation case, and expressly disclaiming negligence and sovereign immunity, we find the Residents abandoned their nuisance claim for personal injury both at trial and on appeal. We also find it significant the trial court, while finding a dangerous condition, notice, foreseeability, and causation under section 537.600.1, never found the Sewer District acted negligently. Accordingly, we do not review the judgment of the trial court as one awarding damages for personal injury based on tort principles. Instead, we review it as one awarding damages for property injury based on principles of inverse condemnation. The judgment of the trial court will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."[1]

## II.  NUISANCE CLAIMS AGAINST A PUBLIC ENTITY

■ Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. The focus is defendant's unreasonable interference with the use of and enjoyment of plaintiff's land ... The *unreasonable use* element of nuisance balances the rights of adjoining property owners.[2]

The Sewer District does not contest their plant constituted a nuisance, so we accept the implicit finding by the trial court that the plant did constitute a nuisance. In general, plaintiff in a successful nuisance case can recover the diminished value of its property, "for any actual inconvenience and physical discomfort which materially affected the comfortable and healthful enjoyment and occupancy of his home, as well as for any actual injury to his health or property caused by the nuisance."[3]

■ We reiterate the Residents only claim is that the odors caused them to lose the full use and enjoyment of their *property*. Absent a claim for personal injury and a waiver of sovereign immunity under sec-

---

1. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

2. *Frank,* 687 S.W.2d at 880 (emphasis in original).

3. *McCracken v. Swift & Co.,* 265 S.W. 91, 92 (Mo.1924).

tion 537.600.1, recovery for nuisance is more limited when, as here, a public entity is the defendant. In *Heins Implement v. Highway & Transport Commission,* we noted, "when private *property* is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation."[4] The Residents, therefore, are constitutionally entitled to just compensation from the Sewer District. Article I, section 26 of the Missouri Constitution provides, "that private property shall not be taken or *damaged* for public use without just compensation."

▆▆▆ If a public entity permanently damages property rights of plaintiff, then it is liable for the fair market value lost in that property.[5] "The fair market value of land is what a reasonable buyer would give who was willing but did not have to purchase, and what a seller would take who was willing but did not have to sell."[6] "The value compensable is only that value which is capable of being transferred from owner to owner and thus of exchange for some equivalent."[7] If the public entity only temporarily damaged the property rights of plaintiff, by contrast, the loss in market value of the property is not the proper criterion.[8] Instead, the proper

measure is the "diminution in value of the use of occupancy of the property for [the] period" taken or damaged.[9] Usually, this value is equivalent to the rent that probably could have been obtained for such period.[10] In *City of Cape Girardeau v. Hunze,* this Court agreed:

> Where land is taken, not to be held permanently, but only for temporary use, the measure of compensation is not the market value but what the property is fairly worth for the time during which it is held, and the same rule applies where property, no part of which is taken, is temporarily injured. The criterion for determining the compensation is held, in some cases, to be the rental value of the property.[11]

Whether permanent or temporary the lost value of the property for the appropriate period of time must be shown. A calculation of damages is also affected by whether the odors constituted a *partial* taking of plaintiff's property rights. Missouri recognizes that the taking or damage of only *part* of plaintiff's property by a public entity may cause consequential damage to plaintiff's *remaining* property.[12] This consequential damage is in addition to the value of plaintiff's property actually [permanently or temporarily] taken or damaged.[13] These damages are also measured

4. 859 S.W.2d 681, 693 (Mo. banc 1993) (emphasis added); *see also Owen v. City of Springfield,* 741 S.W.2d 16 (Mo. banc 1987).

5. *See City of St. Louis v. Union Quarry & Constr. Co.,* 394 S.W.2d 300, 305 (Mo.1965).

6. *Id.*

7. *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 1437–1438, 93 L.Ed. 1765 (1949).

8. *See City of Cape Girardeau v. Hunze,* 314 Mo. 438, 284 S.W. 471, 480 (1926); *see also First English Evangelical Lutheran Church v. Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) ("temporary takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation").

9. 4 NICHOLS ON EMINENT DOMAIN section 12E.01, at 12E–2 (3rd Ed.1999).

10. *See Kimball,* 69 S.Ct. at 1437–1438.

11. 284 S.W. at 480.

12. *See State ex rel. Missouri Highway and Transp. Comm'n v. Beseda,* 892 S.W.2d 740, 741 (Mo.App.1994); *see also Union electric Company v. Saale,* 377 S.W.2d 427, 429 (Mo. 1964) (stating "just compensation ... generally speaking, is the fair market value of the land actually taken, and the consequential damages, if any, to the remainder of the land caused by the taking"); *State ex rel. Missouri Highway and Transp. Comm'n v. Horine,* 776 S.W.2d 6, 10 (Mo. banc 1989).

13. *See Kamo Electric Cooperative v. Baker,* 365 Mo. 814, 287 S.W.2d 858, 862 (1956).

by the depreciation in value of the remaining property.[14]

Recovery for a physical injury and loss of the use and enjoyment of property itself is not appropriate for an inverse condemnation claim, although such injuries may be relevant to calculating the lost value of the property.[15] Therefore, the trial court erroneously applied the law to award the Residents damages for their physical suffering and loss of the use and enjoyment of their homes apart from its effect on the market or rental value of their property. Furthermore, no evidence of any kind was presented about the value of the Residents' property. The Residents did not testify what they paid for their property interest, nor did they offer testimony from a property valuation expert. In fact, shortly after trial began the Residents expressly decided against such testimony. The only evidence showed their physical injuries and the subjective use and enjoyment they lost in their homes due to the odors. Accordingly, we also find no substantial evidence supports the damages awarded by the trial court. Consequently, we need not determine whether the odors, in fact, constituted a temporary or permanent or partial taking, nor discuss how to distinguish among these varieties or combinations thereof.

Although the Residents' inverse condemnation claim is based on nuisance, compensation in this case is not determined according to the law of nuisance as recited in *McCracken*.[16] We hold the attempt to award damages for personal injuries in a *nuisance-based* inverse condemnation case for injury to property is erroneous as a matter of law. The Residents suffered physical injury, but their nuisance-based inverse condemnation claim only seeks compensation for injury to their *property* rights. Accordingly, they are not entitled to recover for the loss of use and enjoyment of their property caused by the odors apart from how that loss affects the overall lost value in their property rights. The judgment of the trial court is reversed.

All concur.

also *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 599, 90 L.Ed. 729 (1946) (stating "condemnation proceedings are *in rem*").

**16.** *See supra* text accompanying notes 3 & 4.

---

**14.** *See id.*

**15.** *See Stewart v. City of Marshfield*, 431 S.W.2d 819, 824 (Mo.App.1968) (stating that, while relevant to figuring the diminished market value of plaintiffs' farm, damage to livestock "as such were not recoverable"); *see*