**Randolph AKERS and Kelly Akers, Respondents,**

v.

**CITY OF OAK GROVE, Missouri, Appellant.**

No. SC 88581.

Supreme Court of Missouri, En Banc.

March 18, 2008.

James H. Ensz, Steven T. Majors, Robert O. Jester, Kansas City, for Appellee.

William L. Carr, Kansas City, for Respondent.

## I. Introduction

WILLIAM RAY PRICE, JR., Judge.

The City of Oak Grove appeals the availability and method of calculation of prejudgment interest on a temporary partial taking inverse condemnation. Although prejudgment interest is available in these cases, it was improperly calculated in this instance. The judgment is therefore reversed and remanded as to the calculation of prejudgment interest. The judgment is affirmed in all other respects.

## II. Facts

The City of Oak Grove has recently experienced serious problems with its sewer system. Randolph and Kelly Akers, owners of several apartment buildings in the city, were victims of these problems. On May 8, 2002, significant rainfall seeped into and overloaded the city's sewer system. This overload caused sewage to come up through the toilets and bathtubs in four of the Akers' eight apartment units. The sewage was more than a foot deep in these apartments, creating extensive damage and forcing the residents to move out.

The Akers filed suit against the city on a claim of permanent inverse condemnation, seeking recovery for diminution in value of the property, as well as the loss of use of the property, which in this case constituted lost rent. Prior to the trial, the Akers informed the city and the court that they planned to seek prejudgment interest on any potential award. Both parties stipulated that the determination of prejudgment interest would be made by the trial judge rather than the jury. The parties also agreed that the date of taking, if one occurred, was May 8, 2002.

At trial, the Akers' expert witness estimated a reasonable cost of repairing the apartments at $106, 213.27. The Akers also requested lost rental income in the amount of $37,350.00. The jury found for the Akers and awarded them $110,000. The Akers then moved for prejudgment interest from the date of taking through the date of the verdict. The trial court awarded prejudgment interest in the amount of $25,791.12. The city has since paid the judgment with the exception of the prejudgment interest.

The city appeals the award of prejudgment interest on two grounds. First, the city argues that this case involves a temporary partial taking for which prejudgment interest is not appropriate. In the alternative, it argues that even if prejudgment interest is available, it should have been determined by the jury rather than the judge.

## III. Standard of Review

■ Resolution of the issues in this case requires interpretation of article I, section 26 of the Missouri Constitution. Constitutional interpretation is a question of law and is subject to *de novo* review. *Farmer v. Kinder*, 89 S.W.3d 447, 449 (Mo. banc 2002).

## IV. Analysis
### A.

■ The Missouri Constitution provides that "private property shall not be taken or damaged for public use without just compensation." Mo. Const. art. I, section 26. This concept encompasses both direct takings, wherein the government formally takes land for public use via eminent domain, and inverse takings, where the government takes or damages land, sometimes unintentionally, without going through an official process. *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980). When a taking occurs, the owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

However, calculating just compensation can be complex. This complexity exists because direct and indirect takings are further divided by whether the taking is permanent, temporary, or partial in nature. Before examining the availability of prejudgment interest, it is first necessary to understand the other types of damages available in each of these categories.

### B.
#### 1.

■ In a permanent taking the government is granted permanent ownership

of the property from the date of the taking. The primary measure of damages in a permanent taking is the lost fair market value of the property. *Byrom v. Little Blue Valley Sewer District, et al.*, 16 S.W.3d 573, 577 (Mo. banc 2000). The fair market value is "what a reasonable buyer would give who was willing but did not have to purchase, and what a seller would take who was willing but did not have to sell." *Id.* (internal citation omitted).

■ Separate damages for loss of use are not available. *Id.* at 578. This is because the property is treated as having changed hands at the date of taking. As a result, the plaintiff is unable to suffer from a loss of use of land he no longer had the legal right to use. Any damages for potential loss of use would instead be factored into calculating the lost fair market value of the property. *Id.*

### 2.

■ In a temporary taking the government is treated as having occupied the property for a limited amount of time before returning it to the plaintiff. Damages are calculated as the "diminution in value of the use of occupancy of the property for [the] period taken or damaged." *Byrom*, 16 S.W.3d at 577 (internal citation omitted). This amount is generally measured as the rental value of the property for the period of the taking.[1] *Id.* In addition to the rental value, if the property has been damaged as a result of the taking then damages are available to restore the property to its pre-taking condition. *See United States v. General Motors Corp.*, 323 U.S. 373, 383–384, 65 S.Ct. 357, 89 L.Ed. 311 (1945).

■ Damages for loss of use are once again unavailable. *Byrom*, 16 S.W.3d at 578. During the period of taking the plaintiff is treated as having rented out his property to the governmental entity. Any damages for potential loss of use during the period of taking would instead be factored into the fair rental value of the property. *Id.*

### 3.

Finally, a taking is classified by whether it is partial or total in nature. *Byrom*, 16 S.W.3d at 577. This distinction exists separately from the permanent/temporary taking classification. Therefore, a taking can be classified as any combination of permanent/temporary and total/partial. Here, because the Akers suffered temporary damage to four of their eight apartment units, they have a claim for a temporary partial taking.

■ The impact that a partial taking has on the calculation of damages depends on the existence of consequential damages to the remainder of the property. This is because "Missouri recognizes that the taking or damage of only *part* of plaintiff's property by a public entity may cause consequential damage to plaintiff's *remaining* property." *Byrom*, 16 S.W.3d at 577. If no consequential damages exist, then the plaintiff's recovery is limited to the damaged portion of the property. However, if the non-damaged portion of the property is negatively affected by the taking, then consequential damages may allow the plaintiff to recover for the equivalent of a total taking.

---

1. A number of other valuation methods have been applied by courts. *See* 4 Julius L. Sackman, *Nichols on Eminent Domain* section 12E.01[1](3d ed.2006). This variation exists because "measuring just compensation can be difficult in certain instances and is not amenable to a rigid formula." *Independence Park Apartments v. United States*, 465 F.3d 1308, 1311 (Fed.Cir.2006).

## C.

### 1.

■ This Court has never squarely addressed the availability of prejudgment interest in cases of indirect takings, either permanent or temporary. However, we have previously held that prejudgment interest is an acknowledged component of just compensation in cases of direct takings. *St. Louis Housing Authority v. Magafas,* 324 S.W.2d 697, 699–700 (Mo.1959).[2] No discernable logical or constitutional distinction exists that would lead to a different conclusion in cases of indirect takings.

In fact, logic dictates the availability of prejudgment interest for the same reason that damages for loss of use are not available: The property in question is treated as having been sold/rented to the government on the date of the taking. On that date the plaintiff loses use of the property but gains use of the proceeds. Any delay in receiving those proceeds is properly compensable via the award of prejudgment interest. This simply recognizes the time value of money, a basic economic concept.

Courts around the country have reached a similar conclusion. *See, e.g., Coeur d'Alene Garbage Serv. v. City of Coeur d'Alene,* 114 Idaho 588, 759 P.2d 879, 884 (1988) ("In an inverse condemnation case a party whose property has been taken should be entitled to interest on the value of the property from the date of the taking."); *Herman v. City of Wichita,* 228 Kan. 63, 612 P.2d 588, 592 (1980) ("in an inverse condemnation case, just compensation requires an allowance of interest from the date of the taking by the governmental body until payment is made").

### 2.

■ Nonetheless, the city argues that prejudgment interest cannot be calculated on a temporary partial taking. While the city is correct that a distinction exists between permanent and temporary partial takings, it overstates the impact of this difference. Although more complicated than a permanent taking, calculating prejudgment interest on a temporary taking is not only possible, but is constitutionally required.

Unlike a permanent taking, where prejudgment interest is simply added to the full fair market value of property from the date of the taking, a temporary taking requires differing calculations based on the details of the primary damage measurement. This is because the court must ensure that interest is not calculated until that time at which the plaintiff would have theoretically received the underlying damages.

For example, if damages are based on rental value, then interest would not initially be available on the entire lump sum rental amount. Instead, interest would be available on each periodic increment beginning on the date that payment would have been received. *See Kimball Laundry Co. v. United States,* 338 U.S. 1, 4, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949).

### D.

The city further argues that even if prejudgment interest is available it must be awarded by the jury, not by the judge. This argument overlooks the fact that prior to trial both parties orally stipulated that the judge would award prejudgment interest.

---

**2.** The right to prejudgment interest in cases of direct condemnation has since been codified, *see* section 523.045, RSMo 2000. This right stems from the constitution, not just the statute. *State v. Kendrick,* 383 S.W.2d 740, 747 (Mo.1964).

 "An oral admission or agreement, made in open court for the purposes of the trial or hearing, and preserved in the record, has the same binding force and effect as a written, signed stipulation." *Fair Mercantile Co. v. Union–May–Stern Co.*, 359 Mo. 385, 221 S.W.2d 751, 755 (1949). Furthermore, "[s]tipulations varying or altering trial procedure, or waiving the benefit of procedural statutes, have been consistently enforced by our courts in the absence of any claim of fraud, duress or mistake ..." *Pierson v. Allen*, 409 S.W.2d 127, 130 (Mo.1966).

 Here, both parties agreed to the trial procedure of having the judge decide the issue and amount of prejudgment interest. In pre-trial discussions over the issue, counsel for the city stated that "[o]bviously the city's position is that we don't believe they should be awarded prejudgment interest, but we do agree with the assertion that we believe it is a ruling for the Court and not a jury question." Tr. at 44–46. Stipulations of this sort are both common and helpful to the smooth functioning of the judicial system. Where, as here, the stipulation has occurred in good faith, it must be enforced.

### E.

The problem is not that the court calculated interest, but that the court used the wrong rate and did not take into account the dates at which interest might have been due. The court awarded prejudgment interest at the rate of nine percent per annum from the date of the taking. The nine percent rate was taken from section 408.040,[3] the general interest on judgments statute.[4]

In deciding the appropriate interest rate, this Court notes that Missouri courts have put forth two theories on prejudgment interest. One theory provides that an allowance of interest must be based upon either a statute or a contract, express or implied; except for actions in equity, in which case, it is a matter for the trial court's discretion. *See Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149, 157 (1952). A second theory recognizes interest as an element of damages necessary to return plaintiffs to the status quo, compensating plaintiffs for the loss of use of money to which they were entitled. *See Laughlin v. Boatmen's Natl. Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974, 978 (1945); *Boswell v. Brinckmann*, 579 S.W.2d 781, 784 (Mo.App.1979). To some extent, these theories are resolved with a liberal interpretation of the statutes authorizing recovery of prejudgment interest; primarily by a broad definition of "account" in section 408.020. *See Coleman v. Kansas City*, 353 Mo. 150, 182 S.W.2d 74, 78 (1944); *A.G. Edwards & Sons v. Drew*, 978 S.W.2d 386, 396–97 (Mo.App.1998).

 Any potential inconsistency between these theories need not be resolved here because the right to interest in a condemnation claim stems directly from the constitutional "just compensation" requirement. 6A *Nichols on Eminent Domain* section 26E.02[4] (3d. ed.2006). In Missouri, the six percent interest rate provided in section 523.045 reflects the legislature's judgment of what is constitutionally required to achieve just compensation for a direct taking. As already noted, no logical or constitutional distinction exists between direct and indirect takings that would impact the award of prejudgment interest. *See* discussion at section C1. Neither party argues that six percent is

---

3. All statutory references are to RSMo 2000, unless otherwise noted.

4. This statute has since been amended. Prejudgment interest on a tort claim is now calculated at the Federal Funds Rate plus three percent.

constitutionally inadequate for purposes of compensation. As such, this Court holds that prejudgment interest in cases involving indirect takings should be calculated at the same rate as in cases involving direct takings: six percent per annum.

## V. Application

The Akers have suffered a temporary partial taking. As outlined above, the basic measure of damages is the fair market rental value of the property during the time it was taken. *Supra* at 4–5. The Akers are also entitled to compensation to repair their property. *Id.* As each payment would accrue, interest would begin to run on that payment from the date of accrual. Likewise, as the Akers incurred repair costs, interest would begin to run on each payment when made. It was error for the trial court to calculate interest for all the Akers' accumulated damages as if they originated on the same date and it was error for the trial court to award this interest at a rate of nine percent.

## VI. Conclusion

As a result, the judgment is reversed and remanded as to the calculation of prejudgment interest. The judgment is affirmed in all other respects.

STITH, C.J., TEITELMAN, LIMBAUGH, RUSSELL and WOLFF, JJ., and SWEENEY, Sr.J., concur. BRECKENRIDGE, J., not participating.