

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MARK AND SHERRY DAVIS,  )
KEVIN LAUGHLIN, DAVID AND  )
DENISE KAMM,  )
   )
    Appellant-Respondents,  )
   )   WD85669 (Consolidated with WD85670
v.  )   and WD85688)
   )
CITY OF KEARNEY, MISSOURI,  )   Opinion filed:  December 26, 2023
   )
    Respondent-Appellant.  )

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**THE HONORABLE SHANE T. ALEXANDER, JUDGE**

Division Four:  Gary D. Witt, Chief Judge, W. Douglas Thomson, Judge
and Mark Styles, Jr., Special Judge

Before this court are cross-appeals stemming from an inverse condemnation action filed by Mark and Sherry Davis ("the Davises"), David and Denise Kamm ("the Kamms"), and Kevin Laughlin ("Laughlin") (collectively, "the Plaintiffs") against the City of Kearney ("the City") in the Circuit Court of Clay County ("trial court").  A directed verdict was granted for the City as to Laughlin's claim, and a jury returned verdicts in favor of the Davises and the Kamms.  The appeals were consolidated, with the Plaintiffs' appeal raising three points and the City's appeal

raising four points.  Because the trial court's judgment did not resolve the issue of prejudgment interest, the judgment is not final, and we must dismiss the parties' appeals.

**Factual and Procedural History**

The Plaintiffs are neighbors, all residing in residential homes in the first plat of the White Gates Subdivision of the City.[1]  Looking at the homes from the street, from right to left (running west to east), Laughlin's home is first, followed by the Davises', and ending with the Kamms'.  Running behind all the homes to the south is a ditch into which public stormwater naturally, as well as artificially, drains. Years ago when the Davises moved into their home, this ditch was a little creek which one could easily step across.  Since then, this creek has transformed into a drainage channel approximately ten to thirteen feet wide and at least eight feet deep.  This transformation was due to "fairly significant flow-induced erosion and loss of soil" stemming from an increase in the stormwater flow over time through the channel.

The drainage channel flows eastward, originating from a three-and-a-half-foot tube which "daylights" in the lot to the west of Laughlin's property.  The three-and-a-half-foot tube collects stormwater from upstream and channels it into the ditch, which also collects stormwater runoff from neighboring properties.  This collected stormwater then flows downstream behind Laughlin's property, then the

---

[1] The City approved the first plat in 1990 and it was recorded in 1991.  This is the first of six plats making up the White Gates Subdivision.

Davises', and finally the Kamms'. Also flowing into the drainage channel between the Davis and Kamm properties is stormwater from a storm sewer pipe. This underground pipe is connected to a stormwater drain on the street fronting the properties, into which water from the streets and surrounding yards flows and runs south down the storm sewer pipe and into the drainage channel. Water flow from this pipe has also increased over time.

Flow-induced erosion eventually became noticeable behind the Plaintiffs' properties, and the City was contacted. It was opined by experts for the Plaintiffs that the problem is not one the Plaintiffs can fix on their own. The City became involved in attempting to address the erosion issues, communicating primarily with the Davises and sending City employees, officials, and hired experts to view the properties on various occasions. However, at some point, the City decided it would take no further action to address the drainage or erosion issues. The Plaintiffs subsequently filed their petition against the City, alleging inverse condemnation, negligence, nuisance, and trespass. Their prayer for relief as to the count of inverse condemnation requested payment of just compensation for their damages, interest thereon at the statutory rate for governmental takings,[2] and their

---

[2] "In Missouri, the six percent interest rate provided in section 523.045 reflects the legislature's judgment of what is constitutionally required to achieve just compensation for a direct taking. . . . As such, this Court holds that prejudgment interest in cases involving indirect takings should be calculated at the same rate as in cases involving direct takings: six percent per annum." *Akers v. City of Oak Grove*, 246 S.W.3d 916, 922-23 (Mo. banc 2008). In a permanent taking scenario, as the parties agree is alleged here, "prejudgment interest is simply added to the full fair market value of property from the date of the taking[.]" *Id.* at 921.

costs. The Plaintiffs later voluntarily dismissed without prejudice the negligence and nuisance counts, and the trial court dismissed the trespass count after a hearing.

The Plaintiffs proceeded to jury trial on their claims of inverse condemnation. The parties stipulated pre-trial that if damages were recovered, the trial court would determine the amount of prejudgment interest. At the close of all evidence, the City's Motion for Directed Verdict was granted with respect to Laughlin's claim. The jury returned verdicts in favor of the Davises and Kamms, awarding them $180,000 and $145,000, respectively. This was reflected in the trial court's May 3, 2022 judgment, which also stated "that, pursuant to RSMo Section 523.045 and the stipulation of the parties, prejudgment interest will be calculated by the Court." Importantly, no amount of prejudgment interest was ever calculated by the trial court, nor can it be determined by this court, as a date of taking was not determined by the trial court from which the interest could be calculated.

The City timely filed its Motion for Judgment Notwithstanding the Verdict (JNOV). Laughlin filed a Motion for New Trial, and the Davises and Kamms filed a Motion for and Memorandum in Support of Award of Prejudgment Interest.[3] A

---

[3] Assuming that the May 3, 2022 judgment was otherwise final, these motions were untimely, having been filed on June 3, 2022, one day past the thirty-day deadline imposed by Rule 78.04. This untimely filing stemmed in part from the trial court's direction to have their post-trial motions submitted by June 3, 2022. The trial court mistakenly stated June 3rd instead of June 2nd, as the latter date was thirty days after the trial court's May 3, 2022 judgment. Nonetheless, trial courts are not allowed to "extend the time for taking any action under Rules 52.13, 72.01, 73.01, 75.01, 78.04, 81.04, 81.07, and 84.035 . . . ."

4

hearing on these motions was held on July 19, 2022, at which time the trial court took them under advisement. No rulings on these motions were ever entered by the trial court. The City thereafter filed a timely Notice of Appeal, as did Laughlin. The Davises and the Kamms subsequently filed a timely Notice of Cross-Appeal, and the appeals were consolidated.

## Finality of Judgment

Before addressing the merits of the parties' appeals, we must first determine whether a final judgment exists. *See Complete Constr., LLC v. Frog Eyes, LLC*, 655 S.W.3d 274, 277 (Mo. App. W.D. 2022) (citing *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. banc 2020)). "'[T]he finality of a judgment is a prerequisite to our jurisdiction.'" *Jefferson City Med. Group, P.C. v. Brummett*, 665 S.W.3d 380, 384 (Mo. App. W.D. 2023) (alteration in original) (quoting *Team, Inc. v. Schlette,* 814 S.W.2d 12, 13 (Mo. App. E.D. 1991)). If the trial court's judgment is not final, we must dismiss the appeals. *Complete Constr., LLC*, 655 S.W.3d at 277 (citing *Wilson*, 600 S.W.3d at 765).

> A "final judgment" pursuant to Section 512.020(5) must: (1) "be a judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim)" and (2) "be 'final,' either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b)."

Rule 44.01(b). What does appear "untimely," however, is ultimately timely as the result of our decision today. As the May 2022 judgment was only interlocutory as a result of not addressing the interest component of the requested relief, the clock for the post-judgment motions never began to run.

*Id.* (quoting *Wilson*, 600 S.W.3d at 771).[4]

With respect to the count for inverse condemnation, the Plaintiffs' First Amended Petition prayed for an award of interest at the statutory rate per annum in addition to their damages. The parties also stipulated pre-trial that the trial court would determine prejudgment interest if damages were awarded, and the trial court's judgment recognized that it would calculate prejudgment interest pursuant to such stipulation and § 523.045. However, the court did not finally resolve that issue. While the trial court's judgment recognized it was to calculate prejudgment interest for the purpose of awarding it to the Davises and Kamms the judgment did not do so, nor did the trial court later hold a hearing or otherwise determine the amount due. Additionally, and in tandem with calculating the interest due, the trial court did not determine the date of the taking, a necessary component in calculating prejudgment interest in takings cases. *See Akers v. City of Oak Grove*, 246 S.W.3d 916, 921 (Mo. banc 2008). Indeed, as evidenced in oral argument, there is no agreement between the parties as to when the taking took place. Without that determination, the commencement date upon which prejudgment interest begins is not known.

By leaving these issues unresolved, the judgment was not final. *Cf. Brummett*, 665 S.W.3d at 385 (holding judgment was not final or appealable where judgment held a defendant was liable for attorney's fees but did not determine the

---

[4] The trial court did not certify its judgment as final for purposes of appeal pursuant to Rule 74.01(b). We therefore do not address that issue.

6

amount of liability). Indeed, "'[a] judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment.'" *Id.* (quoting *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994)). This is related to the general principle that "a judgment which determines that a defendant is *liable* for damages, but not *the amount* of that liability, is not final or appealable until the amount of damages is finally determined." *Id.* (citations omitted). Further, "''[a] judgment that requires external proof or another hearing to dispose of disputed issues involved in the litigation is not final for purposes of Rule 74.01(b).'''" *Id.* (quoting *Shea v. Gaither*, 389 S.W.3d 725, 730 (Mo. App. E.D. 2013)).

Although we find no Missouri case in which this specific component of damage has arisen, federal courts have specifically addressed this issue and found a lack of final judgment where prejudgment interest was left unresolved. In *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 857 F.3d 1347 (Fed. Cir. 2017), the district court awarded a party prejudgment interest but "never resolved the parties' dispute regarding the date from which to begin calculating prejudgment interest or set the amount of prejudgment interest to be awarded to [the party]." *Id.* at 1351. "As a result, there [was] no final decision because the district court ha[d] not 'determine[d], or specif[ied] the means for determining the amount' of prejudgment interest." *Id.* at 1352 (third and fourth alterations in original) (quoting *U.S. v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233-34, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958)). *See also F. & M. Schaefer Brewing Co.*, 356 U.S. at 234

7

(holding there was not a final judgment where "the action also sought recovery of interest on the amount paid by respondent from the date of payment to the date of judgment," and the district court's "opinion [did] not state the date or dates of payment and, hence, did not state facts necessary to compute the amount of interest to be included in the judgment"); *Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 924 (8th Cir. 2006) (holding orders were not final, appealable orders where one "indicated that the amount[] of . . . pre-judgment interest . . . remained unresolved" and the other "indicated that the amount of pre-judgment interest was yet to be determined"); *Com. Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 37 (1st Cir. 2000) (holding an order was not a final judgment where "[t]he court reserved jurisdiction to decide 'the appropriate date and rate for calculating pre-judgment interest'" but that there was later a final judgment when "the district court ruled on the question of pre-judgment interest and issued an amended judgment").

Accordingly, by not determining the amount of prejudgment interest or even the date of the taking, "the purported judgment has not fully resolved at least one claim in a lawsuit nor established all the rights and liabilities of the parties with respect to that claim." *Complete Constr., LLC*, 655 S.W.3d at 278 (citation omitted). Consequently, the trial court's May 3, 2022 judgment is not a final or appealable judgment, and we lack jurisdiction to consider the parties' appeals.

## Conclusion

For the foregoing reasons, the appeal is dismissed for a lack of final judgment.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.